UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD BOWDEN ROUNDTREE,<br><br>Plaintiff,<br><br>— against —<br><br>CITY OF NEW YORK, JOHNNY MARQUEZ, and NYPD Detective JOHN DOE, in his individual capacity,<br><br>Defendants. | Case No. 26-cv-2724<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

1. This is an action for the false arrest and malicious prosecution of Plaintiff Edward Bowden Roundtree, who was wrongfully arrested and charged with committing robbery and assault with a deadly weapon in Canarsie, Brooklyn on December 29, 2024, after the victim of that crime mistakenly identified him as one of the assailants, despite being attacked by unknown individuals who hid their faces under ski masks.

2. Mr. Roundtree did not commit these crimes, and in fact, was not in Canarsie, Brooklyn at the time they were committed.

3. Immediately after he was arrested and informed of the date and time of the crime for which he was suspected, Plaintiff tried to provide Defendants with Ring doorbell video footage which showed him entering his girlfriend's home in the Bronx at the exact time of the Brooklyn robbery, evidence which confirmed he could not have committed the crime in question.

4. Rather than examine the alibi evidence that confirmed his innocence, Defendants—New York City Police Department detectives from 69th Precinct—proceeded with

providing knowingly false and materially incomplete information to prosecutors, causing Plaintiff to be charged with crimes they could have confirmed he did not commit, had they not turned a blind eye to unassailable alibi evidence available to them.

5. As a result, Plaintiff was wrongfully incarcerated for eight days, at which point all charges were dismissed against him because of the Ring camera evidence.

6. Plaintiff brings this action under 42 U.S.C. § 1983 for violating his constitutional rights and rights under New York State law.

## JURISDICTION AND VENUE

7. This action arises under 42 U.S.C. §§ 1983 and 1988 in addition to the laws of the State of New York and New York City.

8. Jurisdiction lies in this Court over claims against employees of the New York City Police Department under its federal question and civil rights jurisdiction, 28 U.S.C. §§ 1331 and 1343.

9. Venue is proper in this Court under 28 U.S.C. § 1391 because Plaintiff's claims arose within the Eastern District of New York.

## PROCEDURAL REQUIREMENTS

10. Plaintiff has complied with all statutory prerequisites to filing this action.

11. Within 90 days of the criminal proceeding being dismissed against him, Plaintiff filed a Notice of Claim with the New York City Comptroller's office.

12. Plaintiff testified at a hearing pursuant to N.Y. General Municipal Law § 50-h, on December 11, 2025.

## PARTIES

13. Plaintiff Edward Bowden Roundtree is a resident of the Bronx, New York.

14. Defendant JOHNNY R. MARQUEZ, is a detective with the NYPD, who was assigned to the 69th precinct in Brooklyn, New York, in February 2025. He was at all relevant times described herein employed by NYPD, an agency of the City of New York. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

15. Defendant JOHN DOE is a detective assigned to the New York City Police Department in the 69th precinct in Brooklyn, New York. He was at all relevant times described herein employed by the NYPD. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of the duties attendant to that employment. His true identity is presently unknown to Plaintiff. He is sued in his individual capacity.

16. Defendant City of New York is a municipal corporation in the State of New York.

## FACTUAL ALLEGATIONS

### A. Mr. Roundtree Was In the Bronx – Not Brooklyn – When the Robbery Was Committed

17. On the evening of December 28, 2024, Mr. Roundtree went to Ultra Lanes Baldwin, a bowling alley on Long Island, New York at approximately 10:07 p.m.

18. He remained there for several hours.

19. After he left the bowling alley, Mr. Roundtree drove to his girlfriend's residence in the Bronx, arriving there at 1:25 a.m. on December 29, 2024.

20. At 1:26 a.m., Mr. Roundtree entered his girlfriend's apartment unit.

21. Mr. Roundtree's arrival and entry were captured on a Ring doorbell camera with clear digital timestamps.

22. While Mr. Roundtree was inside his girlfriend's apartment in the Bronx, at approximately 1:50 a.m., a robbery was committed at 1319 E. 103 Street in the Canarsie neighborhood of Brooklyn, New York.

23. The victims reported that when they got home that evening, four unknown individuals pulled up in a black Chevy outside their house and proceeded to rob them of their personal possessions at gunpoint; one of the assailants struck the male victim in the face with a firearm and threatened to kill them if they called the police.

24. Upon information and belief, the victims reported the assailants were unknown to them and wearing ski masks at the time of the robbery.

25. The victims of the crime reported being at Ultra Lanes Baldwin – the same bowling alley Mr. Roundtree had been to earlier that evening – before driving home to their house in Brooklyn.

26. NYPD detectives investigating the robbery obtained surveillance footage from the bowling alley and ran those images through a facial recognition system to see if any individuals from the bowling alley had criminal records.

27. Mr. Roundtree's face was identified in this manner as he was seen entering the bowling alley that evening, and had a felony record.

28. Upon information and belief, there was no other evidence or information connecting Mr. Roundtree to the Canarsie robbery.

29. More than a month after the robbery, and without any other leads, detectives showed the robbery victims Mr. Roundtree's photograph and told them he was the number one suspect.

30. Although the robbery and assault were committed by individuals whose faces were obscured by masks and the crime was committed in the middle of the night in complete darkness, after showing the victims Mr. Roundtree's photo from the bowling alley, the detectives then showed the victims a photo array containing Mr. Roundtree's photo, and asked them if they could identify anyone.

31. Predictably, and mistakenly, the victims identified Mr. Roundtree as one of the assailants who had robbed them.

32. As confirmed by the Ring camera footage, Mr. Roundtree was in the Bronx at the time and had nothing to do with the robbery.

**B. Defendants Arrested Mr. Roundtree and Refused to Hear His Alibi**

33. On or about February 3, 2025, Mr. Roundtree reported for a scheduled meeting with his parole officer, Ms. James, at 79 Alexander Avenue in the Bronx.

34. As a condition of his parole supervision, Mr. Roundtree routinely met with PO James to discuss job prospects, programming, and his financial status.

35. When Mr. Roundtree checked in with reception that day, Ms. James directed him down a hallway rather than toward her office, where they typically met.

36. There, two plainclothes NYPD officers, who had been awaiting his arrival, seized, and handcuffed him without explanation.

37. The officers then searched his pockets and removed all of his personal property, including his cellphone and cash.

38. The officers transported Mr. Roundtree to a Brooklyn precinct where two detectives, Defendants Marquez and Doe, accused Mr. Roundtree of committing the Canarsie robbery and assault with a deadly weapon.

39. Defendants presented Mr. Roundtree with the photo still showing him the Long Island bowling alley on the night in question.

40. Mr. Roundtree denied any involvement in the robbery and told the detectives he had not been in Brooklyn that night; after he was at the bowling alley, he went to the Bronx where he stayed with his girlfriend.

41. Defendants showed Mr. Roundtree the photo array where his photograph had been circled and initialed by the victims.

42. After being shown the photo array, Mr. Roundtree asked to call his girlfriend, to see if there were any surveillance cameras at her building that could help confirm he was there at the time of the robbery.

43. He made the call to his girlfriend in the presence of the Defendants, on speaker phone.

44. Mr. Roundtree's girlfriend told him and Defendants that she has a Ring Door Camera at her apartment that shows the exact time he walked into his girlfriend's apartment that night. She told the detectives that she could bring the recording to the precinct immediately.

45. As soon as she said this, Defendants hung up the phone ending the conversation.

46. Defendants returned Mr. Roundtree to the holding pen, refusing to hear any more.

47. Defendants failed to provide instruction to Mr. Roundtree's girlfriend as to how she could provide the evidence to them.

48. Mr. Roundtree remained in police custody in central booking until his arraignment two days later.

**C. Mr. Roundtree Was Wrongfully Incarcerated on Rikers Island for Seven Days**

49. On February 5, 2025, Mr. Roundtree was charged with robbery in the first degree, and arraigned before the Honorable Judge Nancy F. Carrington in Kings County Criminal Court.

50. At his arraignment, defense counsel informed Judge Carrington on the record that Mr. Roundtree's girlfriend was present in the courtroom and had timestamped Ring camera footage that corroborated Mr. Roundtree's alibi.

51. Although presented with the evidence in court, ADA Langsam stated she was unable to verify the accuracy of the timestamped Ring camera photos.

52. Given the seriousness of the charges and the failure to verify the alibi information Mr. Roundtree offered, Judge Carrington, issued a temporary order of protection against Mr. Roundtree and remanded him, with bail set at $300,000 bond, $150,000 partially secured, or $100,000 cash—amounts concededly beyond his financial means.

53. Mr. Roundtree was sent to Rikers Island, and remained incarcerated there from February 5 through February 11, 2025.

54. During his seven-day confinement, he was subjected to forced medical procedures, including a blood draw and oral swab.

55. One night, he was awakened by three officers attempting to strip search him while he was sleeping—a procedure he did not consent to and found deeply traumatizing.

**D. All Charges Were Dismissed Once the Ring Camera Evidence Was Reviewed**

56. On February 11, 2025, Mr. Roundtree was produced to criminal court for the case to be indicted before a grand jury.

57. Instead of appearing before the grand jury, or a judge, Mr. Roundtree waited for hours in a cell in the courthouse without any idea what was happening on his case.

58. Eventually, he spoke with an attorney—a newly assigned one who he had never met before that day—who told him that the District Attorney's Office finally reviewed Mr. Roundtree's alibi evidence and would be seeking to dismiss the charges that had been brought against him.

59. When Mr. Roundtree was later brought before the criminal judge, he was informed, officially, the case was being dismissed against him.

60. When Mr. Roundtree was processed and released from the courthouse; he was let out without his phone, property, money, or warm clothing.

61. Not being provided even so much as a MetroCard, Mr. Roundtree found himself outside in winter, without real shoes or a coat, forced to beg strangers for help until someone lent him a phone to call his girlfriend who called an uber to take him home.

62. Mr. Roundtree's personal property—including the clothing he was wearing at the time of his arrest—was never returned.

63. The experience of being wrongfully arrested and accused of a crime he did not commit, a crime for which he had unequivocal evidence of his innocence, has been

profoundly traumatic to Mr. Roundtree who had been working diligently to follow his parole conditions and avoid reincarceration.

## FIRST CAUSE OF ACTION

False Arrest Under 42 U.S.C. § 1983, New York State Law, and
New York City Admin Code § 8-801 *et seq.*
*Against All Defendants*

64. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

65. Defendants caused Mr. Roundtree to be seized, and placed under arrest on February 3, 2025, when he appeared for his regularly scheduled meeting with his parole officer.

66. Defendants had no judicial warrant authorizing them to seize Plaintiff.

67. Mr. Roundtree was conscious of his confinement, did not consent to his confinement, and his confinement was not otherwise privileged.

68. Mr. Roundtree's arrest and detention was caused by Defendants' highly suggestive and improper photo array that led victims of the robbery to incorrectly identify him as their assailant.

69. Upon information and belief, the only reason Mr. Roundtree was included in the lineup was because he was visualized at the bowling alley where the victims had been, hours before the robbery, and because he had a felony record.

70. Upon information and belief, Defendants showed the victims Mr. Roundtree's photo from the bowling alley, before showing them a photo array containing his photograph, which improperly caused them to recognize him and incorrectly identify him.

71. Defendants knew or should have known that showing the photograph of Mr. Roundtree to the victims before showing him a photo array that included his photograph posed a significant risk of misidentification.

72. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Stovall v. Denno*, 388 U.S. 293, 302 (1967), abrogated on other grounds in *United States v. Johnson*, 457 U.S. 537 (1982).[1]

73. No reasonable police officer would have relied on this identification because there was no other evidence connecting Mr. Roundtree to the crime.

74. As such, this identification did not support probable cause to justify Mr. Roundtree's arrest.

75. As a direct and proximate result of this unlawful conduct, Mr. Roundtree sustained the damages alleged herein.

## **SECOND CAUSE OF ACTION**

False Imprisonment Under 42 U.S.C. § 1983, New York State Law, and
New York City Admin Code § 8-801 *et seq.*
*Against All Defendants*

76. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

77. To the extent that this highly-suggestive identification of Mr. Roundtree, could have given a shred of probable cause to justify Mr. Roundtree's arrest, Mr. Roundtree's alibi offered shortly after his detention, dissipated it.

---

[1] There is extensive scientific research, over decades, that shows how fundamentally unreliable eyewitness identifications can be, particularly in circumstances that are already unduly suggestive. *See Perry v. New Hampshire*, 565 U.S. 228, 262 (2012) (dissent by Sotomayor, J. collecting research).

78. Defendants unreasonably refused to consider such plainly exculpatory evidence when they terminated the call with Mr. Roundtree's girlfriend when she tried to provide such evidence to them.

79. Defendants intentionally turned a blind eye to such evidence once they became aware it existed and continued detaining Mr. Roundtree, without lawful justification.

80. The Second Circuit has been clear that officers may not disregard "plainly exculpatory evidence" in making a probable cause determination. *Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006).

81. "[A] police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." *Tretola v. Cty. of Nassau*, 14 F. Supp. 3d 58, 73 (E.D.N.Y. 2014) (quoting *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)).

82. Plainly exculpatory evidence is evidence showing "a person cannot as a matter of law be guilty of a crime." *Garcia v. Does*, 764 F.3d 170, 184 (2d Cir. 2014).

83. The evidence that Mr. Roundtree's girlfriend told Defendants she possessed is plainly exculpatory as it provided contemporaneous video footage proving that Mr. Roundtree was in another borough at the time of the crime, and thus incapable of having perpetrated it.

84. Such information was easily accessible to the detectives, and they had a duty to review it, which they failed to do. *See Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007) (quoting *Baker v. McCollan*, 443 U.S. 137 (1979) (J. Blackmun concur) ("An officer's duty to investigate specific, readily-verifiable claims of innocence in a reasonable time period clearly covers reviewing a surveillance camera video record of a crime, when, as here, it was an easily available piece of physical evidence.").

85. As a result, Mr. Roundtree continued to be detained for two days before he was arraigned on false felony charges, and detained for an additional seven days on Rikers Island after it.

86. Based on the foregoing, it was unreasonable for Defendants to believe that they had lawful cause to continue to detain Mr. Roundtree after they became aware of plainly exculpatory evidence confirming his innocence with respect to the crime of which he was suspected.

87. As a direct and proximate result of this unlawful conduct, Mr. Roundtree sustained the damages alleged herein.

## **THIRD CAUSE OF ACTION**

Malicious Prosecution Under 42 U.S.C. § 1983, New York State Law, and
New York City Admin Code § 8-801 *et seq.*
*Against All Defendants*

88. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

89. Defendants initiated a prosecution against Mr. Roundtree by drafting paperwork alleging he committed crimes they did not have probable cause to believe he in fact committed.

90. The criminal action terminated in favor of Mr. Roundtree, with a dismissal on or about February 11, 2025.

91. Defendants acted with actual malice in that they commenced a criminal proceeding despite the fact they had conducted an investigation that revealed Mr. Roundtree's only connection to the crime in question was that he had been at the bowling alley where the victims had been hours before the robbery and that he had a felony record – and nonetheless,

they proceeded to conduct a highly-suggestive lineup in order to secure a positive identification of him that was known to provide unreliable results.

92. Further, after securing that misidentification, Defendants learned there was video evidence confirming Mr. Roundtree was at his girlfriend's home in the Bronx at the time the robbery and assault took place in Brooklyn.

93. "A malicious prosecution claim can rest on a prosecution that is continued notwithstanding the discovery of information that exculpates the defendant: 'Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. In order for probable cause to dissipate, the groundless nature of the charge must be made apparent by the discovery of some intervening fact.'" *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003) (quoting *Lowth v. Town of Cheetowaga*, 82 F.3d 563, 571 (2d Cir. 1996)).

94. The information provided by Mr. Roundtree's girlfriend to the Defendant constitutes an "intervening fact" that revealed the "groundless nature of the charge," which "eliminated probable cause." *Id*.

95. Nonetheless, in utter disregard for the truth and Mr. Roundtree's constitutional rights, Defendants induced prosecutors to pursue charges against Mr. Roundtree, causing him to suffer a loss of liberty for seven days in jail on Rikers Island.

96. As a result of the above conduct, Mr. Roundtree suffered physical, and psychological injuries, as well as a deprivation of liberty.

WHEREFORE, Plaintiff Edward Bowden Roundtree demands judgment against the above-captioned Defendants as follows:

a. For compensatory damages, jointly and severally, in an amount to be determined at trial, but not less than one million dollars;

b. For punitive damages, jointly and severally, in an amount to be determined at trial;

c. For reasonable attorneys' fees, costs, and disbursements, under 42 U.S.C. § 1988 and other applicable laws;

d. For pre- and post-judgment interest as allowed by law; and

e. For such other relief as this Court deems just and proper.

Dated: New York, New York
May 6, 2026

WERTHEIMER FLEDER LLP

By: Mara Fleder

Mara Fleder
14 Wall Street, Suite 4C
New York, New York 10005
(646) 344-4212
mara@wfllp.com